UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KAREN GREEN** | **CIVIL ACTION** |
| **VERSUS** | **NO: 23-927** |
| **UNDERWRITERS AT LLOYD'S, LONDON** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court are Defendant Nationstar Mortgage LLC's Motion to Dismiss (Doc. 3); Defendant Community Loan Services LLC's Motion to Dismiss (Doc. 17); and Defendant Certain Underwriters at Lloyd's, London's Motion to Dismiss (Doc. 5). For the following reasons, the Motions are **GRANTED**.

## BACKGROUND

Plaintiff Karen Green alleges that she owns property at 232 Rue Landry Rd., St. Rose, Louisiana that was damaged as a result of Hurricane Ida on August 29, 2021 ("the Property"). The Property was secured by a mortgage held by Defendant Community Loan Servicing, LLC ("Community"). On February 8, 2021, Community purchased a lender-placed insurance policy to insure the Property. In May 2021, Community purchased

1

a replacement lender-placed policy from Defendant Certain Underwriters at Lloyd's, London ("Lloyds") to insure the Property. After the Property was damaged as a result of Hurricane Ida, a claim was submitted to Lloyds. Although Lloyds issued a payment for some of the damage to the Property, Plaintiff alleges that additional amounts are owed on the claim. She also contends that Community breached its duties to her in various ways in regard to force-placing insurance on the Property. Plaintiff refinanced the mortgage loan with Defendant Nationstar Mortgage, LLC ("Nationstar") on September 20, 2022.

Defendants Lloyds, Community, and Nationstar have each separately moved for dismissal of the claims against them on various grounds. Plaintiff opposes. The Court will consider each Motion in turn.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The court need not, however, accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer

---

[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[2] *Id.*
[3] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[4] *Iqbal*, 556 U.S. at 678.

2

possibility" that the plaintiff's claims are true.[5] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[6] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[7]

## LAW AND ANALYSIS

### A. Lloyds's Motion to Dismiss

Defendant Lloyds moves for dismissal of Plaintiff's claim under the Policy, arguing that she is not a named insured, additional insured, or third-party beneficiary under the Policy. The Policy, bearing certificate number MP7004384, is properly considered on a motion to dismiss because it was quoted in Plaintiff's Complaint and is central to Plaintiff's claims against Lloyds.[8]

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[9] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[10] "An insurance policy should not be interpreted in an unreasonable or a strained manner so

---

[5] *Id.*

[6] *Lormand*, 565 F.3d at 255–57.

[7] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

[8] Lee v. Safeco Ins. Co. of Am., No. CIV.A. 08-1100, 2008 WL 2622997, at *2 (E.D. La. July 2, 2008)

[9] Mayo v. State Farm Mut. Auto. Ins. Co., 869 So. 2d 96, 99 (La. 2004).

[10] LA. CIV. CODE art. 2046.

3

as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[11] "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent."[12]

"In Louisiana, a plaintiff may sue under an insurance policy when he is a named insured, additional insured, or third-party beneficiary of the contract."[13] It is clear from the terms of the Policy that Community is the sole named insured under the Policy. And while the Policy lists several additional insureds, Plaintiff is not among them. Instead, Plaintiff contends that she is a third-party beneficiary under the Policy. To be a third-party beneficiary to a contract under Louisiana law, "there must be a clear expression of intent to benefit the third party."[14] "[A]bsent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof. A stipulation pour autrui is never presumed."[15]

Plaintiff argues that three provisions of the Policy support a finding that she is a third-party beneficiary. First, the Policy requires that Lloyds provide coverage "equal to the borrower's policy" that should have been obtained by the borrower. Second, Plaintiff points out that the Policy provided coverage in the amount of $20 million, which far exceeded

---

[11] Carrier v. Reliance Ins. Co., 759 So. 2d 37, 43 (La. 2000).
[12] *Mayo*, 869 So. 2d at 99–100.
[13] *Lee*, 2008 WL 2622997, at *2.
[14] M & M Gaming, Inc. v. Storey, 788 So. 2d 1230, 1233 (La. App. 4 Cir. 2001).
[15] Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary, 939 So. 2d 1206, 1212 (La. 2006).

Community's interest in the Property.[16] Finally, Plaintiff points to a provision that states that "in the event of 'dual interest,'" any mortgagor claiming coverage under the policy shall submit to examination.

These statements do not evince a clear intention to make Plaintiff a third-party beneficiary. Rather, the first and second provisions merely speak to the amount of coverage that Lloyds must provide, and the third provides obligations for a mortgagor "*in the event*" that there is a dual interest. The third provision does not create a dual interest where one does not otherwise exist. The Policy provisions relied upon by Plaintiff do not expree the clear manifestations of intent considered in the cases to which she cites. For example, the policy at issue in *Lee v. Safeco Insurance Company of America*, expressly stated that the insurer would pay the lender no more than the amount of its interest in the insured location and that "[a]mounts payable in excess of [the lender's] interest will be paid to the 'borrower.'"[17] The Policy at issue here contains no similar provision. Plaintiff is not a third-party beneficiary of the Policy.

Plaintiff next alleges that Lloyds has waived this defense and is estopped from arguing that she is not a third-party beneficiary because it initially adjusted the claim with her and issued funds directly to her. She

---

[16] The Policy covered multiple properties with different borrowers. Doc. 17-1.

[17] *Lee*, 2008 WL 2622997, at *4; *see also* D'Juve v. Am. Mod. Home Ins. Co., No. CIV.A. 14-2386, 2015 WL 1650259, at *3 (E.D. La. Apr. 14, 2015) (relying on policy provision stating "You hereby direct that any benefits due which are in excess of your interest in the property be paid to the mortgagor"); Brown v. Am. Mod. Home Ins. Co., No. CV 16-16289, 2017 WL 2290268, at *5 (E.D. La. May 25, 2017) (same).

alleges that she relied on the conduct of Lloyds in believing that she was an insured under the Policy and in incurring expenses to obtain estimates and legal counsel.

"Waiver is generally understood to be the intentional relinquishment of a known right, power, or privilege."[18] Courts have held that, under Louisiana law, "[g]enerally, waiver of a policy defense can only be asserted by parties to the insurance contract."[19] In fact, the court in *Aguillard v. American Security Insurance Co.* noted that it could not locate "a single instance of waiver being successfully raised by a non-party/non-beneficiary to an insurance contract" outside of the context of the Louisiana Direct Action Statute.[20] Further, the *Aguillard* court found no justification for extending the defense of waiver to a non-party to an insurance policy, "given the requirement under Louisiana law that the contract 'manifest a clear intention to benefit the third party' that is lacking in this matter."[21] This Court finds this position compelling and declines to allow Plaintiff, a non-party to the insurance policy, to argue waiver here.

As for Plaintiff's estoppel argument, the "rarely applied" doctrine requires three elements: "(1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment

---

[18] Arceneaux v. Amstar Corp., 66 So. 3d 438, 450 (La. 2011).
[19] Ins. Co. of N. Am. v. W. of England Shipowners Mut. Ins. Ass'n, 890 F. Supp. 1296, 1298 (E.D. La. 1995); Erem Invs., LLC v. Markel Int'l, No. 06-4553, 2008 WL 2704558, at *8 (E.D. La. July 8, 2008) ("This principle is equally instructive in the present case, as Alabdalle is not an "insured" and, consequently, the policy rationale behind the benefit of waiver does not extend to a person in his position.").
[20] No. 2:22-CV-05085, 2023 WL 2521052, at *2 (W.D. La. Mar. 14, 2023).
[21] *Id.*

because of the reliance or representation."[22] The Court finds that Plaintiff has not alleged sufficient facts in her Amended Complaint to support a claim of estoppel against Lloyds. Plaintiff alleges that after initiating a claim for damage on her property, Lloyds worked with her to adjust her claim and issued payment directly to her as "payee." However, she does not allege that she was misled by this conduct or that she suffered due to her reliance thereon. Rather, the Amended Complaint attributes the expenses she incurred for a public adjuster and legal counsel to pursue a claim under the Policy to her lender Community's misrepresentations.[23] Accordingly, Plaintiff has not stated a claim for estoppel against Lloyds.

Finally, Plaintiff alleges that she can proceed against Lloyds under the Louisiana's Direct Action Statute. This is incorrect. The Louisiana's Direct Action Statute allows "injured persons" to bring direct actions under liability policies covering tortfeasors. It has no application in the first-party property insurance context. Accordingly, Plaintiff's claims against Lloyds are dismissed.

### B. Community's Motion to Dismiss

Next, Plaintiff brings claims for negligence, breach of contract, breach of fiduciary duty, misrepresentation, violations of the Truth in Lending Act (TILA), violations of the Real Estate Settlement Procedures Act (RESPA), and violations of the Dodd-Frank Act against Community, her mortgage

---

[22] Kinsale Ins. Co. v. CD Mgmt. of New Orleans, Inc., No. CV 23-736, 2023 WL 3949121, at *5 (E.D. La. June 12, 2023). *See also* Loubat v. Audubon Life Ins. Co., 177 So. 2d 281, 283 (La. 1965); Balehi Marine, Inc. v. Firemen's Ins. Co. of Newark, New Jersey, 460 So. 2d 16, 17 (La. App. 1 Cir. 1984) ("[E]stoppel cannot be invoked to bring within the coverage of a[n insurance] policy . . . risks not included nor contemplated by its terms.").

[23] Doc. 1-2 at 34.

lender. Specifically, Plaintiff alleges that Community breached its duties to her under their mortgage agreement ("the Loan Agreement") by obtaining insurance that exceeded the mortgage amount, obtaining insurance at above-market rates, failing to give her notice of the new Policy, failing to list her as a named insured, failing to submit a timely proof of loss or make a claim under the Policy for the Property's damage, and failing to use the loss payments made under the Policy to repair the Property. She also alleges that Community misrepresented to her that she could submit a claim under the Policy and that she relied on this representation in obtaining experts to assess the Property damage and legal counsel to pursue claims under the Policy. Community moves for dismissal of all claims against it, arguing (1) that Plaintiff's claims are time-barred, (2) that Plaintiff's claims are barred by the Louisiana Credit Agreement Statute, and (3) that Plaintiff has failed to state a claim for which relief can be granted.

First, Community argues that many of Plaintiff's claims are time-barred by a one-year term of prescription. It alleges that Plaintiff knew or should have known of her claims against Community in December 2021 when Lloyds rejected her insurance claim, yet she failed to add Defendant to this lawsuit until February 1, 2023. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[24] "[D]ismissal for failure to state a claim based on the statute of limitations defense should be granted only when the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the

---

[24] Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003).

allegations in the complaint."[25] Plaintiff responds, and this Court agrees, that a determination that the statute of limitations has run cannot be made on the basis of the allegations in the Amended Complaint. Specifically, while the Amended Complaint does state that Lloyds denied her December 2021 claim, it also states that Lloyds paid a supplemental claim to Plaintiff on February 7, 2022 and then failed to pay a supplemental claim submitted on June 10, 2022. Accordingly, the Court must "await further factual development before ascertaining whether the statute of limitations bars Plaintiff's claims."[26]

Next, Community argues that in light of the clear terms of the Loan Agreement, Plaintiff's claims against it are barred by Louisiana's Credit Agreement Statute, and she cannot state a claim upon which relief can be granted. Louisiana's Credit Agreement Statute provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."[27] The Credit Agreement Statute prohibits all causes of action based on alleged duties that are not contained within a written agreement.[28] Further, in order to state a claim for breach of contract, "the plaintiff must allege the breach of a specific provision."[29] "When the words of a contract are clear and explicit and lead to no absurd

---

[25] Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc., 998 F.3d 190, 196 (5th Cir. 2021) (quoting Jaso v. The Coca Cola Co., 435 F. App'x 346, 352 (5th Cir. 2011)).
[26] Curtis v. Cerner Corp., 621 B.R. 141, 159 (S.D. Tex. 2020).
[27] LA. REV. STAT. § 6:1122.
[28] Hovell v. Origin Bank, 311 So. 3d 340, 341 (La. 2021); Jesco Const. Corp. v. Nationsbank Corp., 830 So. 2d 989, 992 (La. 2002).
[29] Crouch v. Lakeview Loan Servicing, LLC., No. CV 20-2716, 2021 WL 928026, at *2 (E.D. La. Mar. 11, 2021).

consequences, no further interpretation may be made in search of the parties' intent."[30]

The Loan Agreement between Plaintiff and Community required Plaintiff to maintain homeowner's insurance on the property. The relevant portions of the Loan Agreement state as follows:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. . . .
>
> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be

---

[30] LA. CIV. CODE art. 2046.

applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.[31]

The parties also entered into a Waiver of Escrow Account Agreement, which provided that:

> At any time the Borrower has defaulted on its obligation under this agreement, Lender may, in its sole discretion: a) establish an escrow account for taxes or insurance as applicable and as permitted by applicable law; b) immediately collect funds sufficient to cover any outstanding taxes and insurance premiums due; and c) begin to collect, on a monthly basis, a sum for the annual taxes and insurance premiums, in addition to whatever cushion is permitted by law and your loan documents.[32]

Community argues, and this Court agrees, that no part of the Loan Agreement required it to obtain insurance for the Property if Plaintiff failed to do so. Rather, the Agreement unequivocally states that Community "may" at its option obtain coverage and it "may at its sole discretion" establish an escrow account to pay for that coverage, but it "is under no obligation to purchase any particular type or amount of coverage."[33] Likewise, the Agreement does not provide that Plaintiff must be added as a named insured on any policy obtained by Community, and it expressly acknowledges that any coverage obtained may not protect Plaintiff. The Agreement does not require any notice be given to Plaintiff if coverage is obtained. The Agreement expressly acknowledges that any policy obtained may provide greater coverage than was previously in effect and may significantly exceed market rates. And the Agreement does not require Community to make a

---

[31] Doc. 17-2.
[32] Doc. 31-1.
[33] Docs. 17-2, 31-1.

11

claim under any insurance policy, instead providing only that the "Lender *may* make proof of loss."[34]

That said, the Agreement does require that insurance proceeds be applied to repair the Property. Plaintiff's Amended Complaint makes the conclusory allegation that Defendant failed to apply loss payments made under the Policy to repair the Property. It also states, however, that the payments of insurance proceeds made by Lloyds were paid "directly to Plaintiff."[35] Accordingly, Plaintiff has not alleged facts supporting a claim that Community breached the Loan Agreement by failing to remit insurance proceeds to Plaintiff for repair of her property. To the extent that Plaintiff is alleging that Community is negligent in not procuring additional insurance proceeds to repair the Property, the Loan Agreement does not create that obligation.[36]

Further, Plaintiff has not alleged any facts supporting a misrepresentation claim. There is no allegation that Community made any written representation that Plaintiff was a beneficiary under the Policy.[37] Plaintiff's obligation in the Loan Agreement to submit a proof of loss under the Policy does not create a right to payment under the Policy. The Loan Agreement unequivocally provides that any coverage obtained by Community

---

[34] Doc. 17-2 (emphasis added).

[35] Doc. 1-2.

[36] *See* Barbe v. Ocwen Loan Servicing, LLC, 383 F. Supp. 3d 634, 644 (E.D. La. 2019).

[37] The purpose of the Louisiana Credit Agreement Statute is "to prevent potential borrowers from bringing claims against lenders based on oral agreements." Dixon v. Ally Fin. Corp., No. CV 19-11344, 2020 WL 1234435, at *2 (E.D. La. Mar. 13, 2020). "A claim based on oral assurances not memorialized in the written loan agreement" is barred by the Louisiana Credit Agreement Statute. Whitney Bank v. SMI Cos. Glob., Inc., 949 F.3d 196, 206 (5th Cir. 2020).

"shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property."[38] The Loan Agreement also provides that any costs for public adjusters or other third parties retained by Plaintiff are the sole obligation of Plaintiff. Accordingly, Plaintiff has failed to plead allegations that Defendant violated a written provision of the Loan Agreement.

Finally, Plaintiff does not allege any facts or provide any zealous argument in support of her claims under TILA, RESPA, or Dodd-Frank. Plaintiff does not identify what provisions of these Acts she contends that Community violated. In support of these claims, Plaintiff's Amended Complaint states only that Defendant "force placed unauthorized hazard insurance on Plaintiff's Property which exceeded the amount required by the loan agreement, and which required accurate and meaningful disclosures as well as changes to the policy's requirements, none of which Defendant provided therefore Plaintiff is entitled to relief under TILA, RESPA, and Dodd-Frank."[39] As discussed above, the terms of the Loan Agreement do not support an allegation that the force-placed insurance was unauthorized, and the Loan Agreement expressly provides that any force-placed policy "might provide greater or lesser coverage than was previously in effect."[40] Accordingly, these claims too fail.

Plaintiff has failed to state a claim upon which relief can be granted, and her claims based on unwritten obligations of Defendant are barred by the Louisiana Credit Agreement Statute.

---

[38] Doc. 17-2.
[39] Doc. 1-2.
[40] Doc. 17-2.

### C. Nationstar's Motion to Dismiss

Finally, in its Motion to Dismiss, Nationstar argues that Plaintiff has not alleged facts to support a claim against it. In fact, the Amended Complaint's only allegation involving Nationstar is that in September 2022, Plaintiff refinanced the mortgage loan held by Community with Nationstar. Plaintiff alleges that upon taking over as lender on the Property, Nationstar "became responsible for compliance with the terms of the mortgage and force placed insurance policy."[41] Accordingly, for the same reasons discussed above that Plaintiff has not alleged a claim against Community, she likewise has not alleged a claim against Nationstar. Plaintiff's claims against Nationstar are dismissed.

## CONCLUSION

For the foregoing reasons, the Motions are **GRANTED**, and Plaintiff's claims are **DISMISSED**. Plaintiff may amend her Complaint within 14 days of this Order to the extent that she can remedy the deficiencies identified herein.

New Orleans, Louisiana this 28th day of December, 2023.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[41] Doc. 1-2.